UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-CV-09329-CAS (GJSx) | Date | October 2, 2023 |
|---|---|---|---|
| Title | TUTOR PERINI BUILDING CORP. V. FIRST MERCURY INS. CO. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Robert Nida | Sharon Lewis |
| | Blaise Curet |

**Proceedings:**     ZOOM HEARING RE: DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. 54, filed on JUNE 9, 2022, and Dkt. 80, filed on July 31, 2023)

## I.    INTRODUCTION

On October 9, 2020, plaintiff Tutor Perini Building Corp. ("Tutor Perini") brought suit in this Court against defendant First Mercury Insurance Company ("First Mercury") and Does 1 through 50, alleging claims for (1) breach of contract, and (2) tortious breach of the implied covenant of good faith and fair dealing ("bad faith"). Dkt. 1 ("Compl.") at 19-33. Tutor Perini's claims arise from First Mercury's initial failure to defend Tutor Perini in an underlying action related to a dispute regarding insurance coverage of a commercial construction project. Id.

On May 21, 2021, both parties filed motions for partial summary judgment. Dkts. 19, 25. On July 1, 2021, the Court denied First Mercury's motion for partial summary judgment, and granted Tutor Perini's motion for partial summary judgment on its breach of contract claim, finding that First Mercury breached its duty to defend Tutor Perini in the underlying action. Dkt. 37 ("Order re 7/1/22 MSJ") at 14.

On June 9, 2022, First Mercury filed its second motion for partial summary judgment, dkt. 54 ("MSJ"), along with its statement of uncontroverted facts and conclusions of law, dkt. 55 ("Def. SUF"). On June 20, 2022, Tutor Perini filed its opposition to First Mercury's motion for partial summary judgment, dkt. 60 ("Opp."), along with its statement of disputed facts, dkt. 60-3 ("Pltf. SDF"). On June 27, 2022, Tutor Perini filed its reply. Dkt. 62 ("Reply"). On the same day, First Mercury filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-CV-09329-CAS (GJSx) | Date | October 2, 2023 |
|---|---|---|---|
| Title | TUTOR PERINI BUILDING CORP. V. FIRST MERCURY INS. CO. | | |

objections to Tutor Perini's evidence offered in its opposition. Dkt. 63 ("Evidentiary Objections").

On July 11, 2022, the Court held a hearing. That same day, the Court denied First Mercury's motion for summary judgment without prejudice as to whether Tutor Perini can recover costs prior to the tendering of the counterclaim; granted summary judgment in favor of Tutor Perini on the issue of attorneys' fees; and reserved judgment on whether Tutor Perini's bad faith claim has accrued, and therefore on whether Tutor Perini is entitled to punitive damages. Dkt. 68.

Thereafter, on March 16, 2023, a panel of arbitrators from the Construction Industry Arbitration Tribunal of the American Arbitration Association ("AAA") issued an interim award in the underlying arbitration between Tutor Perini and TWJ 1101, LLC ("TWJ"). Dkt. 76, Exh. A. The underlying arbitration began in 2018. Id. at 2. Specifically, on September 17, 2018, Tutor Perini filed a Demand for Arbitration with the AAA. Id. On May 16, 2022, the Final Hearing in the underlying arbitration commenced. Id. at 3. On March 3, 2023, the panel of arbitrators issued an order that declared the Final Hearing closed as of February 2023. Id. at 4. On March 16, 2023, the panel issued its interim award, finding that TWJ owed Tutor Perini $2,889,752.00 and that Tutor Perini owed TWJ $79,120.00. Id. at 22. Thus, including the set-off to TWJ, the interim award to Tutor Perini was $2,810,632.00. Id. The panel asserted that "[t]he Interim Award is intended to fully address all claims and defenses submitted in these proceedings subject to a Final Award that includes [attorneys'] fees, costs and interest." Id.

On May 24, 2023, First Mercury requested a status conference to discuss its motion for partial summary judgment. Dkt. 76. On May 31, 2023, First Mercury submitted a status conference statement. Dkt. 78. On June 5, 2023, the Court held a status conference and ordered simultaneous supplemental briefing and simultaneous responsive briefing. Dkt. 79.

On July 31, 2023, First Mercury filed its opening brief in support of its motion for partial summary judgment on Tutor Perini's second count and claim for punitive damages. Dkt. 80. That same day, Tutor Perini filed its opening supplemental brief in opposition to First Mercury's motion for partial summary judgment. Dkt. 81. On August 14, 2023, First Mercury filed its opposition to Tutor Perini's opening brief regarding First Mercury's motion for partial summary judgment. Dkt. 82. That same day, Tutor Perini filed its reply to First Mercury's opening supplemental brief. Dkt. 83.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:20-CV-09329-CAS (GJSx) | Date | October 2, 2023 |
| Title | TUTOR PERINI BUILDING CORP. V. FIRST MERCURY INS. CO. | | |

On October 2, 2023, the Court held a hearing on First Mercury's motion for partial summary judgment. Counsel for Tutor Perini appeared and stated that, while he reserved his objections, he would rely on his briefing. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.    BACKGROUND

The following facts are not meaningfully disputed and are set forth for purposes of background. Unless noted, the Court references only facts that are uncontroverted and as to which evidentiary objections have been overruled.

### A.    The Project

On June 9, 2014, project owner TWJ entered into a contract with plaintiff, general contractor Tutor Perini Building Corporation, for the construction of the Panorama Tower Project located in Miami, Florida (the "Project"). SUF ¶ 4. The Project consisted of an underground garage and a tower of residential units. Order re 7/1/22 MSJs at 2. The contract required TWJ to implement an Owner Controlled Insurance Program ("OCIP"), which is a coordinated insurance program providing coverage to various parties involved in the construction. Id. at 2.

According to TWJ, construction on the Project was repeatedly delayed and beset with defects and mismanagement. Id. On September 10, 2017, while construction was ongoing, Hurricane Irma landed in Miami. SUF ¶ 10. In late September 2017, a few weeks after Hurricane Irma struck Florida, TWJ alleged that the Project had suffered significant damages to the completed work of Tutor Perini. SDF ¶ 1. On September 27, 2017, TWJ terminated Tutor Perini. SUF ¶ 11.

### B.    The Policy and Duty to Defend

As part of the OCIP, TWJ procured First Mercury insurance, policy no. FMPN10-0058, effective from January 31, 2014, to January 31, 2018 ("the Policy"). SUF ¶ 5.

The Policy provides commercial general liability coverage for TWJ, Tutor Perini, and many of the subcontractors on the Project from "property damage," caused by an "occurrence," subject to the policy limits, satisfaction of the self-insured retention, and all of the terms, conditions, provisions, definitions, exclusions, endorsements, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL            'O'

| Case No. | 2:20-CV-09329-CAS (GJSx) | Date | October 2, 2023 |
|---|---|---|---|
| Title | TUTOR PERINI BUILDING CORP. V. FIRST MERCURY INS. CO. | | |

limitations in the Policy.[1]  SUF ¶ 6.  The Policy also confers and imposes upon First Mercury "the right and duty to defend the insured against any 'suit' seeking" "damages because of . . . 'property damage' to which [the Policy] applies."  Lewis Decl., Exh. D at 57.[2]

Limiting this grant of coverage are several standard exclusions, as well as some added by various endorsements.  One such condition states:

> No insured will except at that insured's own cost voluntarily make a payment, assume an obligation, or incur any expense other than for first aid, without our consent.

SUF ¶ 8.

The Policy also includes the following supplementary Payment provisions:

> We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:
> a. All expenses we incur….

---

[1] The Policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property," or  "[l]oss of use of tangible property that is not physically injured."  Dkt. 21, Declaration of Sharon Lewis ("Lewis Decl.") at 71.  "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Id. at 70.  The Policy also includes "products-completed operations hazard" ("PCOH") coverage, which, as modified by endorsement, provides coverage for: "all . . . 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except: (1) Products that are still in your physical possession; or (2) Work that has not yet met 'substantial completion.'"  Id. at 24.

[2] However, the Contractors Self Insured Retention endorsement states that "[t]he duty to defend provision . . . will apply only in the event that the 'Self Insured Retention' . . . is exhausted by actual payment by the Named Insured."  Lewis Decl. at 26.  The "Self Insured Retention" is effectively a deductible that the insured agrees to pay before the Policy's coverage applies, and, in this case, is set at $50,000 per occurrence.  Id. at 26, 29.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:20-CV-09329-CAS (GJSx) | Date | October 2, 2023 |
| Title | TUTOR PERINI BUILDING CORP. V. FIRST MERCURY INS. CO. | | |

d. All reasonable expenses incurred by the insured at our request to
assist us in the investigation or defense of the claim or "suit".

SUF ¶ 9.

**C.     The Underlying Action and Tender of the Defense**

On November 28, 2017, Tutor Perini filed suit against TWJ in the Miami-Dade
County Circuit Court seeking money that it was allegedly owed under the contract.  SUF
¶ 11.  The case was ordered to be arbitrated before the American Arbitration Association
pursuant to the terms of the contract.  Id.

Tutor Perini states that on or about October 4, 2017, prior to filing the lawsuit, it
forwarded to First Mercury—through West Coast casualty, the third-party
administrator—a September 25, 2017 demand letter from TWJ's attorney.  SDF ¶ 2.  As
such, Tutor Perini alleges that October 4, 2017, was the first time it tendered its defense
to First Mercury.  Id.  Alternatively, First Mercury states that on or about February 5,
2020, Tutor Perini first tendered its defense, by providing First Mercury with TWJ's
counterclaims.  SUF ¶ 15.

On October 22, 2018, TWJ asserted a counterclaim against Tutor Perini for fraud,
conspiracy, violation of Florida's Deceptive and Unfair Trade Practices Act, breach of
contract, breach of implied warranty of fitness, and action on fraudulent lien.  SUF ¶ 13.

Tutor Perini notified its insurance agent at USI Insurance Services of TWJ's
counterclaim on January 30, 2020.  SUF ¶ 14.  The insurance agent notified West Coast
Causality Services of TWJ's counterclaim on February 5, 2020; and notice and the
counterclaim were subsequently provided to First Mercury on the same day.  SUF ¶ 15.

On February 12, 2020, shortly after Tutor Perini had tendered its defense, party
administrator West Coast Casualty advised Tutor Perini that due to a conflict caused by
TWJ suing Tutor Perini, First Mercury would need to provide its coverage position
directly.  SDF ¶ 4.

On June 16, 2020, First Mercury issued a letter denying that it had a duty to defend
Tutor Perini against the claims asserted in TWJ's counterclaims due to the "property
damage Caused By Your Work Exclusion."  SUF ¶ 17; SDF ¶ 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                    **'O'**

| Case No. | 2:20-CV-09329-CAS (GJSx) | Date | October 2, 2023 |
|----------|--------------------------|------|-----------------|
| Title | TUTOR PERINI BUILDING CORP. V. FIRST MERCURY INS. CO. | | |

On July 7, 2020, Tutor Perini responded to the denial letter, identifying 14 categories of construction defect claims, and stating that "some or all of the numerous allegations of resultant property damage and/or construction defects listed above manifested and/or occurred after the substantial completion of the Panorama Tower project." SDF ¶ 8. The categories of alleged construction defects included:

- Damages to the doors, frames and thresholds, including misalignment of the frames;
- Leaks under the pool enclosure;
- Damage to the elevator frames;
- Damage to the machine room;
- Damaged flooring;
- Damage to the sprinkler heads;
- Damage to the plumbing drains;
- Damage to the Cooling Tower;
- Damage due to misplacement of the slick line;
- Damage to the East Canopy;
- Damage resulting from bolts from the safety netting;
- Damage to the main trunk of the fire alarm system;
- Damage to the frequency drives in the main garage; and
- Damage to the jump lift elevators.

SDF ¶ 9.

On or about July 12, 2020, Tutor Perini provided First Mercury with deposition testimony of TWJ's representative regarding construction defects. SDF ¶ 10. On August 5, 2020, Tutor Perini provided First Mercury with TWJ's supplemental list of damages and defects. SDF ¶ 11. On or about August 14, 2020, Tutor Perini told First Mercury that it "now, unequivocally, [has] information to support the proposition that the plaintiff alleges the property has experienced physical damage." SDF ¶ 13.

On or about August 26, 2020, First Mercury sent an email to Tutor Perini stating:

"First Mercury has agreed to review deposition and summary of damages you provided, in order to determine whether any of the damages referenced may constitute covered damages."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-CV-09329-CAS (GJSx) | Date | October 2, 2023 |
|---|---|---|---|
| Title | TUTOR PERINI BUILDING CORP. V. FIRST MERCURY INS. CO. | | |

SDF ¶ 14.

On the same date, Tutor Perini provided First Mercury with additional documents it requested.  SDF ¶ 15.  On or about September 2, 2020, First Mercury told Tutor Perini: "[w]e will provide a response as soon as we are able. Please note that, moving forward, this claim is being reassigned to Carolyn Luken for further handling."  SDF ¶ 17.

On or about September 23, 2020, Tutor Perini sent an email to Carolyn Luken at First Mercury stating:

> My understanding is that this case was transferred to you for further handling on or about September 1, 2020. We hereby repeat our demand for an immediate defense. The Complaint, on its face triggers First Mercury[']s [sic] duty to defend. The depositions that followed reinforced that proposition. We have now been left to defend ourselves for months, in the midst of significant discovery activity. All reasonable deadlines for First Mercury to respond have expired. When may we expect your response.

SDF ¶ 18.

**D.     The Current Action**

On October 9, 2020, Tutor Perini filed this lawsuit against First Mercury, for breach of contract and for tortious breach of the implied covenant of good faith and fair dealing.  SUF ¶ 18.  Tutor Perini's claims are based, in part, on its allegation that First Mercury breached its duty to defend Tutor Perini against the claims asserted in TWJ's counterclaim.  SUF ¶ 19.

On July 1, 2021, this Court found that First Mercury breached the Policy when it denied Tutor Perini's tender of defense of TWJ's counterclaim.  SUF ¶ 20.  Based on this Court's order, on August 2, 2021, First Mercury accepted Tutor Perini's tender of defense, while reserving its rights under the Policy.  SUF ¶ 21.

Tutor Perini continues to submit to First Mercury invoices for legal expenses relating to the lawsuit between Tutor Perini and TWJ.  Tutor Perini claims that the earliest date for which it seeks defense costs is October 10, 2017, whereas First Mercury claims Tutor Perini seeks defense costs starting on September 5, 2017.  SDF at 3.  First Mercury states that Tutor Perini is not entitled to reimbursement of the costs incurred

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                   **'O'**

| Case No. | 2:20-CV-09329-CAS (GJSx) | | Date | October 2, 2023 |
|----------|--------------------------|---|------|-----------------|
| Title    | TUTOR PERINI BUILDING CORP. V. FIRST MERCURY INS. CO. | | | |

prior to February 5, 2020, because this was before Tutor Perini notified First Mercury of TWJ's counterclaim. SUF at 6. On July 11, 2022, the Court found that there remains a question of fact as to whether Tutor Perini can recover costs prior to tendering TWJ's counterclaim to First Mercury on February 5, 2020. Dkt. 68 at 14.

On August 14, 2023, First Mercury filed a declaration asserting that First Mercury "has paid $2,104,660.09 towards Tutor Perini's post-tender legal expenses incurred in defending against TWJ's Counterclaim, excess of the $50,000 self-insured retention." Dkt. 82-3. First Mercury attached a letter that it sent to Tutor Perini's counsel on August 8, 2023, indicating that First Mercury has paid $2,104,660.09 to date and will continue to reimburse "additional reasonable and necessary defense costs" upon receiving additional invoices. Dkt. 82-4, Exh. Y.

## III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:20-CV-09329-CAS (GJSx) | Date | October 2, 2023 |
|---|---|---|---|
| Title | TUTOR PERINI BUILDING CORP. V. FIRST MERCURY INS. CO. | | |

inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV.   DISCUSSION

### A.   Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing

In First Mercury's opening brief, First Mercury argues that it is entitled to summary judgment on Tutor Perini's bad faith claim because the "claim is based solely on First Mercury's alleged breach of the duty to defend, but there is no evidence that First Mercury controlled Tutor Perini's defense, breached any extracontractual duty that it allegedly owed to Tutor Perini, exposed Tutor Perini to an excess verdict, or caused Tutor Perini to sustain damages." Dkt. 80 at 8. First Mercury asserts that because Tutor Perini did not surrender to First Mercury control over the litigation and settlement of TWJ's claims, First Mercury neither owed nor could have breached a duty that would give rise to a third-party bad faith claim. Id. at 11-12.

First Mercury additionally asserts that it is not aware of a Florida case in which a court found bad faith where the breach of the duty to defend did not result in an excess judgment. Id. at 12. First Mercury further argues that it would be inappropriate to find bad faith here because First Mercury acted negligently at worst, and Tutor Perini "received a strong defense by its selected counsel" and did not sustain damages aside from alleged contract damages. Id. at 12. Further, First Mercury contends that there is no evidence it took its coverage position in bad faith, such as "for any reason other than a good faith belief that the Counterclaim did not allege any covered damages." Id. at 12-13. First Mercury distinguishes this case from the cases cited by Tutor Perini, American Fidelity Fire Ins. Co. v. Johnson, 177 So.2d 679 (Fla. 1st D.C.A. 1965) and Robinson v. State Farm Fire & Cas. Co., 583 So.2d 1063 (Fla. 5th DCA 1991), in which the insurers "also rejected opportunities to settle within policy limits," resulting in judgments in excess of policy limits. Id. at 13-14. Although the Court found that First Mercury erred by concluding it did not have a duty to defend, First Mercury argues that an incorrect but merely negligent denial of coverage does not give rise to a bad faith claim under Florida

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                'O'

| Case No. | 2:20-CV-09329-CAS (GJSx) | Date | October 2, 2023 |
|---|---|---|---|
| Title | TUTOR PERINI BUILDING CORP. V. FIRST MERCURY INS. CO. | | |

law.  Id. at 14.  Moreover, First Mercury asserts that an excess judgment against Tutor Perini "was never possible and in fact did not happen" because TWJ sought $8.3 million, and the OCIP and Builder's Risk policies each provided policy limits of $100 million.  Id.

First Mercury contends that because Tutor Perini sustained only alleged contract damages and not "damages beyond amounts due under the policy," Tutor Perini cannot maintain its bad faith claim.  Id. at 15.  According to First Mercury, if Tutor Perini argues it has incurred expenses beyond those paid by First Mercury, and the Court finds that First Mercury has not paid all of the contract damages, those damages would be awarded to Tutor Perini on the breach of contract claim.  Id.  Moreover, First Mercury contends that it "has paid and continues to pay Tutor Perini's reasonable and necessary post-tender defense costs."  Id.  First Mercury further asserts that it was not aware of a settlement opportunity with TWJ, as "TWJ's settlement posture rendered a reasonable settlement of TWJ's Counterclaim impossible."  Id. at 16.  Finally, First Mercury cites Justice Wells' dissent in Berges v. Infinity Ins. Co., 896 So. 2d 665 (Fla. 2004), to explain that "Florida recognized that some attorneys representing insureds have been incentivized to create bad faith claims out of simple mistakes."  Id.

In response to First Mercury's supplemental brief, Tutor Perini asserts that First Mercury avoids the Court's "specific question" as to "whether, under Florida law, [Tutor Perini's] bad faith claim can proceed to trial at the same time as its coverage claim."  Dkt. 83 at 2.  Tutor Perini cites XL Specialty Ins. Co. v. Skystream, Inc., 988 So. 2d 96 (Fla. Dist. Ct. App. 2008) and E.T. Fine Arts v. Century Sur. Co., No. 12-22025-CIV, 2012 WL 13014661 (S.D. Fla. Sept. 28, 2012), to explain that a court may adjudicate an insured's coverage claim before its bad faith claim to protect against prejudice.  Id. at 2-3.  According to Tutor Perini, instead of asserting it has suffered prejudice, First Mercury re-asserts its "flawed arguments" regarding bad faith claims from its motion for partial summary judgment, such as the lack of excess judgment and Tutor Perini's control over the arbitration, which do not fit the facts of the case or Florida law.  Id. at 3-4.  While Tutor Perini "acknowledges that there is no outstanding judgment against it in excess of policy limits," it asserts that an excess judgment never formed the basis of its bad faith claim.  Id. at 4-5.  Tutor Perini additionally explains that it may recover damages for its bad faith claim that are not duplicative of the damages for its breach of contract claim, as the disputed facts regarding bad faith start in October 2017, before the arbitration, and continue throughout the arbitration, and relate to First Mercury's "misuse of discretion."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:20-CV-09329-CAS (GJSx) | Date | October 2, 2023 |
|---|---|---|---|
| Title | TUTOR PERINI BUILDING CORP. V. FIRST MERCURY INS. CO. | | |

Id. at 5 (emphasis omitted).  Finally, Tutor Perini asserts that "punitive damages are uniquely available for the bad faith claim."  Id.

In Tutor Perini's opening supplemental brief in opposition to First Mercury's motion for partial summary judgment, Tutor Perini asserts that there is no reason for the Court to revisit its correct ruling on Tutor Perini's bad faith claim.  Dkt. 81 at 4-5.  Tutor Perini explains that the parties' expert witness disclosures highlight the existence of disputed material facts on the issue of First Mercury's bad faith conduct.  Id. at 6.  Tutor Perini specifically asserts that its expert, David Frangiamore, identified eight opinions regarding First Mercury's bad faith in his report, including the "[f]ailure to promptly affirm or deny full or partial coverage following the January 2020 tender of defense of the underlying litigation."  Id. at 6-7.

Tutor Perini additionally argues that the Court raised a question concerning the timing of bringing Tutor Perini's bad faith claim, such as "whether the underlying litigation must conclude before a claim for bad faith accrues," rather than "whether [the claim] can be brought."  Id. at 7 (emphasis omitted); dkt. 68 at 18.  According to Tutor Perini, First Mercury "completely misstates the rule" by arguing that the interim award issued in the TWJ/Tutor Perini arbitration provides a basis for revisiting First Mercury's substantive arguments in its second motion for partial summary judgment.  Dkt. 81 at 7.  Tutor Perini argues that, according to XL Specialty Ins. Co. v. Skystream, Inc., 988 So. 2d 96 (Fla. Dist. Ct. App. 2008), the relevant underlying litigation is that regarding "the insureds' claims against the insurer."  Id. at 7-8 (emphasis omitted).  Further, Tutor Perini contends that the insured does not need to have suffered a loss in excess of the policy limits for a bad faith claim to proceed.  Id. at 8.  Instead, Tutor Perini explains that a bad faith claim may proceed after liability and damages on the insurance policy have been determined, which serves the policy of eliminating prejudice from the claims moving forward concurrently.  Id.  Tutor Perini asserts that questions of fact exist as to First Mercury's liability for certain defense costs, which continue to accrue, and that its claim for attorneys' fees will be determined in the coverage action.  Id. at 8-9.  Unlike in XL Specialty Ins. Co., Tutor Perini argues that First Mercury has not claimed that it would suffer prejudice from Tutor Perini's bringing the bad faith and coverage claims concurrently, but regardless, "any issue of 'prejudice' may be moot already."  Id. at 9.

In First Mercury's opposition to Tutor Perini's opening brief, First Mercury relies on State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So.2d 55 (Fla. 1995), to argue that Tutor Perini's second claim must fail because Tutor Perini and its selected counsel

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**             **'O'**

| Case No. | 2:20-CV-09329-CAS (GJSx) | Date | October 2, 2023 |
|----------|--------------------------|------|-----------------|
| Title    | TUTOR PERINI BUILDING CORP. V. FIRST MERCURY INS. CO. | | |

controlled its defense throughout the arbitration and because Tutor Perini "was never vulnerable to an excess judgment." Dkt. 82 at 3. According to First Mercury, Tutor Perini has not presented evidence that First Mercury's conduct "adversely affected" the arbitration's outcome or handling. Id. First Mercury further argues that the five factors in State Farm Mut. Auto. Ins. Co., and other cases Tutor Perini cites, relate to first-party statutory bad faith claims and not third-party bad faith claims, such that Tutor Perini's authority is not "apt." Id. at 4. Moreover, as it asserted in its opening brief, First Mercury contends that American Fid. Fire Ins. Co. and Robinson do not support Tutor Perini's argument that the insurer's failure to defend alone can form the basis of a bad faith claim, as in both cases, there was a "refusal to settle within policy limits followed by the entry of excess judgments that gave rise to bad faith liability." Id. at 4-5.

Finally, First Mercury argues that Tutor Perini's bad faith claim fails because Tutor Perini has not sustained damages for its bad faith claim, independent of its damages for its breach of contract claim. Id. at 12-13. According to First Mercury, defense costs relate to the breach of contract claim, and Tutor Perini will not sustain damages for bad faith because there was a final determination of TWJ's damages in the arbitration. Id. at 13. First Mercury disputes that a third-party bad faith claim can be based on a failure to defend alone, particularly where there is no excess judgment or settlement. Id. at 12.[3]

---

[3] First Mercury additionally seeks to preclude the opinions of Tutor Perini's expert, David Frangiamore, regarding First Mercury's bad faith conduct. Id. at 5. Citing Federal Rule of Evidence 702, First Mercury contends that Frangiamore is not qualified as an expert on third-party bad faith because he neither knows Florida law nor bases his opinions on Florida law, and Tutor Perini has failed to lay a proper foundation for the admissibility of his testimony. Id. at 5-6. First Mercury asserts that Frangiamore "recalls nothing about the one Florida case where he was retained as an expert in the last 24 years" and "has never consulted on a Florida coverage case." Id. at 7. As such, First Mercury argues that Frangiamore's experience is insufficient to render his opinions reliable. Id. First Mercury contends that Frangiamore's opinions are further not reliable because Frangiamore does not base his testimony on the facts of this case and "does not know the basis of Tutor Perini's second count" or "the standard for common law bad faith or an award of exemplary damages under Florida law." Id. at 8 (emphasis omitted). According to First Mercury, Frangiamore's opinions contradict both the Court's rulings and the applicable law, as Frangiamore incorrectly relies on general insurance industry

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-CV-09329-CAS (GJSx) | Date | October 2, 2023 |
|---|---|---|---|
| Title | TUTOR PERINI BUILDING CORP. V. FIRST MERCURY INS. CO. | | |

As an initial matter, the Court disagrees with First Mercury's assertion that the totality of the circumstances approach to evaluating an insurer's bad faith applies only to first-party statutory bad faith claims. As such, the Court finds that an insurer's bad faith is determined by assessing the totality of the circumstances, which includes the five factors in State Farm Mut. Auto. Ins. Co. v. Laforet. Moreover, "it is for the jury to decide whether the insurer failed to 'act in good faith with due regard for the interests of the insured.'" Harvey v. GEICO Gen. Ins. Co., 259 So. 3d 1, 7 (Fla. 2018) (citing Boston Old Colony, 386 So.2d at 785).

However, there must also be a "causal connection" between the insurer's bad faith and the insured's damages. See Harvey v. GEICO Gen. Ins. Co., 259 So. 3d 1, 7, 11 (Fla. 2018) ("The damages claimed by an insured in a bad faith case 'must be caused by the insurer's bad faith'") (citing Perera v. U.S. Fidelity & Guar. Co., 35 So. 3d 893, 902 (Fla. 2010)); see also McNamara v. Gov't Emps. Ins. Co., 30 F.4th 1055, 1059 (11th Cir. 2022) ("Importantly, a bad-faith plaintiff must link the insurer's conduct to the insured's injury by proving causation."). Generally, an insured proves causation by showing the insurer's bad faith led to an excess judgment. See Welford v. Liberty Ins. Corp., 190 F. Supp. 3d 1085, 1093 (N.D. Fla. 2016) ("In any type of bad faith case, the insured must prove that the alleged bad faith *caused* the excess judgment"); see also Pelaez v. Gov't Emps. Ins. Co., 460 F. Supp. 3d 1259, 1266 (M.D. Fla. 2020) ("[A]n excess judgment is required before the bad faith case can proceed"); Ilias v. USAA Gen. Indem. Co., 61 F.4th 1338, 1344 (11th Cir. 2023) ("[A] bad faith claim under Florida law has two elements: (1) bad faith conduct by the insurer, which (2) causes an excess judgment to be entered against the insured.").

Tutor Perini cites North American Van Lines, Inc. v. Lexington Ins. Co., 678 So. 2d 1325 (Fla. Dist. Ct. App. 1996), for the proposition that an excess judgment is not required for a bad faith claim. See N. Am. Van Lines, Inc., 678 So. 2d at 1333 ("[I]f the insurer refuses to defend and the insured undertakes the defense and settles the case, the insured can certainly sue for reimbursements regardless of whether there is an excess

---

standards and practices to form his opinions rather than on Florida law. Id. at 8-10. First Mercury argues that Frangiamore's opinions are not relevant to Tutor Perini's third-party bad faith claim, have the potential to confuse and mislead the jury, and are thus prejudicial pursuant to Federal Rule of Evidence 403. Id. at 10-11. In light of the Court's ruling, the Court declines to reach this issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:20-CV-09329-CAS (GJSx) | Date | October 2, 2023 |
|---|---|---|---|
| Title | TUTOR PERINI BUILDING CORP. V. FIRST MERCURY INS. CO. | | |

judgment."). However, in <u>Cawthorn v. Auto-Owners Ins. Co.</u>, 791 F. App'x 60 (11th Cir. 2019), the Eleventh Circuit asserted that "the excess judgment rule" requires there to be either an excess judgment or one of its "functional equivalents" for an insured to bring a bad faith claim against an insurer under Florida law. <u>See Cawthorn</u>,791 F. App'x at 64. The Eleventh Circuit explained:

> The first exception [to "the excess judgment rule"] is called a <u>Cunningham</u> agreement, wherein the insurance company and the injured third party agree to try the bad faith claim first, and, if the jury finds no bad faith, the parties agree to settle for policy limits. <u>Cunningham</u>, 630 So. 2d at 182. The second exception is called a <u>Coblentz</u> agreement. <u>Coblentz</u> agreements arise when the insurance company fails to defend the insured and, in response, the insured and the injured third party agree to settle the suit and allow the injured third party to sue the insurance company on a theory of bad faith. <u>Coblentz</u>, 416 F.2d at 1063; <u>Steil v. Fla. Physicians' Ins. Reciprocal</u>, 448 So. 2d 589, 591 (Fla. 2d Dist. Ct. App. 1984). The third exception occurs when an excess carrier incurs damages because the primary carrier acted in bad faith. In such cases, an excess carrier may bring a bad faith claim against a primary insurer "by virtue of equitable subrogation." <u>Perera</u>, 35 So. 3d at 900.

<u>Id.</u> In <u>McNamara v. Government Employees Insurance Company</u>, the Eleventh Circuit reinforced the court's conclusion in <u>Cawthorn</u> but disagreed that a consent judgment could not qualify as an excess judgment. <u>McNamara v. Gov't Emps. Ins. Co.</u>, 30 F.4th 1055, 1056 (11th Cir. 2022). Here, it appears to the Court that there is neither an excess judgment nor one its functional equivalents. Although First Mercury bases its motion for partial summary judgment on the interim arbitration award rather than on the final arbitration award, Tutor Perini prevailed in the underlying arbitration, and it either will be or already has been awarded interest, costs, and attorneys' fees accordingly. As such, the final award cannot affect whether there is an excess judgment against Tutor Perini. In Tutor Perini's reply to First Mercury's opening supplemental brief, Tutor Perini "acknowledges that there is no outstanding judgment against it in excess of policy limits" but asserts that its "bad faith claim was never premised on an excess judgment or on the anticipation of one." Dkt. 83 at 4-5. However, under Florida law, an insured must prove that it suffered damages from the insurer's bad faith to bring a third-party bad faith claim.

Moreover, the Court is not persuaded that <u>E.T. Fine Arts v. Century Sur. Co.</u>, No. 12-22025-CIV, 2012 WL 13014661 (S.D. Fla. Sept. 28, 2012) and <u>XL Specialty Ins. Co.</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL    'O'

| Case No. | 2:20-CV-09329-CAS (GJSx) | Date | October 2, 2023 |
|---|---|---|---|
| Title | TUTOR PERINI BUILDING CORP. V. FIRST MERCURY INS. CO. | | |

v. Skystream, Inc., 988 So. 2d 96 (Fla. Dist. Ct. App. 2008), affect the outcome here. The courts in both E.T. Fine Arts and XL Specialty Ins. Co. emphasized the potential prejudice to the insurer from allowing "bad faith discovery, before the underlying claim for damages under the insurance policy has been determined." XL Specialty Ins. Co., 988 So. 2d at 98. However, as explained above, the Court finds that it is inappropriate to allow Tutor Perini to bring its bad faith claim since there has been no excess judgment or functional equivalent. Thus, the Court need not address the prejudice resulting to First Mercury if Tutor Perini were to bring its coverage claim and bad faith claim concurrently.

### B. Punitive Damages

First Mercury argues that if the Court denies First Mercury's motion for partial summary judgment as to Tutor Perini's second cause of action, the Court should nonetheless strike the prayer for punitive damages. Dkt. 80 at 17. First Mercury explains that there is no evidence to support an award of punitive damages because First Mercury's conduct was not dishonest or fraudulent, and Tutor Perini does not dispute any of First Mercury's deductions. Id. at 18. Tutor Perini does not independently address the issue of punitive damages in its opening supplemental brief or reply to First Mercury's opening supplemental brief. Dkts. 81, 83.

Because the Court finds that Tutor Perini cannot bring its bad faith claim, the Court will not award punitive damages.

## V. CONCLUSION

In accordance with the foregoing, the Court **GRANTS** First Mercury's motion for partial summary judgment as to Tutor Perini's bad faith claim and as to punitive damages.

IT IS SO ORDERED.

| | 00 | : | 08 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |